## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

EMILY TVRDY and
AMANDA MUSILEK,

                Plaintiffs,

v.

MICHAEL HILGERS, in his official
capacity as the Attorney General of the
State of Nebraska; and

ASHLEY NEWMYER, in her official
capacity as the Director of the Division
of Public Health for the Nebraska
Department of Health and Human
Services,

                Defendants.

Case No. 4:26-cv-03189

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

**EXPEDITED REVIEW
REQUESTED**

## INTRODUCTION

1. Few decisions are more personal or consequential than how a woman gives birth. Nebraska deprives expecting mothers of the ability to act on that decision by prohibiting expecting mothers from hiring a certified nurse midwife to attend a home birth, even though home birth itself remains entirely legal.

1

2.      Plaintiffs Emily Tvrdy and Amanda Musilek are expecting mothers who intend to give birth at home with the assistance of a certified nurse midwife (CNM). They seek that care for personal, medical, and religious reasons, and they have had positive experiences with midwife-supported pregnancy and childbirth in the past. Nebraska law prevents them from making that choice.

3.      Under Nebraska's Certified Nurse Midwifery Practice Act, a woman may legally give birth at home, but she may not receive assistance from a certified nurse midwife. Instead, a woman who desires a home birth must either proceed alone—without professional assistance—or forgo home birth altogether.

4.      Nebraska's restrictions arbitrarily and unnecessarily burden the right to choose the manner and circumstances of childbirth. They interfere with deeply personal family and religious decisions, deny access to safe and lawful medical care, and expose expecting mothers to greater risk.

5.      Plaintiffs bring this action to vindicate their rights under the Due Process Clause of the Fourteenth Amendment. They seek declaratory and injunctive relief to prevent enforcement of Nebraska's ban on certified nurse midwives attending home births.

## JURISDICTION AND VENUE

6.      This action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. This Court has jurisdiction over these federal claims under 28 U.S.C. § 1331 (federal question) and § 1343(a)(3) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201.

7.      Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1), because the Defendant resides in this District, and 28 U.S.C. § 1391(b)(2), because a substantial part of the acts giving rise to Plaintiffs' claims occurred and continues to occur in this District.

## PARTIES

### Plaintiffs

8.      Plaintiff Emily Tvrdy is an expecting mother and a registered nurse who works in labor and delivery and has extensive professional experience caring for pregnant women and newborns. She is a resident of Cozad, Nebraska, and a citizen of the United States.

9.      Plaintiff Amanda Musilek is an expecting mother and full-time parent. She has training as a doula and has experienced supporting childbirth in the past. She is a resident of Omaha, Nebraska, and a citizen of the United States.

## Defendants

10.     Defendant Michael Hilgers is the Attorney General of Nebraska. His official duties include upholding and defending the laws of Nebraska and enforcing health regulations. He is responsible for enforcing Nebraska's Certified Nurse Midwifery Practice Act. He is sued in his official capacity only.

11.     Defendant Ashley Newmeyer is the Director of the Division of Public Health for the Nebraska Department of Health and Human Services (DHHS). Ms. Newmeyer has the ultimate responsibility for regulating health-related professions and facilities in the state of Nebraska. She is responsible for adopting rules and regulations to carry out the Certified Nurse Midwifery Practice Act. She is sued in her official capacity only.

## FACTUAL ALLEGATIONS

### Home Birth

12.     During the colonial period, and at the time of the enactment of the Bill of Rights in 1791, the vast majority of American births occurred outside of a hospital with the assistance of midwives.

13.     When the Fourteenth Amendment was enacted in 1868, midwifery was universally legal, and women maintained extensive choices among a variety of birth assistants.

14.     From the founding through the early twentieth century, choices regarding the person assisting childbirth and the place and manner of

4

childbirth were, by practice, law, and custom, a matter of individual and family choice.

15.    Home birth can be a safe option for mother and child, and it is legal in all 50 states.

16.    Home births alleviate the financial burden of childbirth on expecting mothers. Service charges for home births are generally lower than charges for hospital births in the same service area. Further, the lower number of unnecessary medical interventions results in a significant reduction in childbirth costs.

17.    Home births also offer mothers an important alternative to hospitals. They provide a comfortable environment, affordable and accessible services, avoidance of contact with sick people, and compatibility with personal or religious values.

18.    Home birth is rising in popularity nationwide and is at its highest level in decades. Many of those who choose home birth for religious reasons or based on personal values, like the Amish, will proceed with a home birth even if they are unable to secure the services of a qualified CNM, leading to a significantly riskier childbirth experience.

## Harm Caused by Nebraska's Restrictions

19.    The dearth of trained healthcare professionals willing and able to attend home births has pushed Nebraska women to less safe alternatives,

including unassisted home birth and home birth assisted by lay midwives or others who operate without regulation in Nebraska.

20. Unassisted labor or labor with the assistance of a provider with no formal training can be dangerous. Untrained mothers or birth attendants may not know if or when a hospital transfer becomes necessary.

21. There is a demand for certified nurse midwives among Nebraska women, but their options are limited due to the restriction challenged here.

22. There is a physician shortage in Nebraska, with many rural women not having ready access to a doctor. Prenatal care is especially scarce— some women drive over an hour to reach their OB-GYN. This has resulted in women giving birth on the road on the way to the closest hospital with childbirth services.

### Challenged Law

23. Neb. Rev. Stat. § 38-613(3)(b), prohibits CNMs from attending home births even if under the direct supervision of a collaborating physician.

24. This law, unique to Nebraska, excludes CNMs from attending home births despite Nebraska's recognition that they are licensed healthcare professionals qualified to provide prenatal, delivery, and postpartum care.

25. Failure to adhere to the challenged provisions is a felony and can lead to fines and criminal prosecution.

6

26. The challenged restrictions thereby leave expecting mothers with only two options for home births: to labor unassisted or to be attended by a physician. Because physicians are typically unavailable for home births, particularly in rural areas, the most common path for a woman wishing to experience home birth is to proceed unassisted.

## Plaintiff Emily Tvrdy

## Background

27. Emily Tvrdy is a resident of Cozad, Nebraska, a small rural community in central Nebraska.

28. Ms. Tvrdy was born and raised in Nebraska. She attended nursing school at the University of Nebraska Medical Center where she earned a degree in nursing. She is now a registered nurse working in labor and delivery and has spent much of her adult life caring for pregnant women and newborn children.

29. Beyond her nursing experience, Ms. Tvrdy spent two years as a doula supporting mothers in childbirth.

30. During nursing school, Ms. Tvrdy studied under certified nurse midwives and observed births in both hospital and out-of-hospital settings. She became particularly interested in childbirth models that emphasize continuity of care, maternal autonomy, and limited medical intervention for low-risk pregnancies.

31.  Ms. Tvrdy is married and the mother of four children. She is currently pregnant with her fifth child, with an expected due date of November 2, 2026.

32.  Ms. Tvrdy wishes to give birth at home with the assistance of a certified nurse midwife for her current pregnancy and for her future low-risk pregnancies.

**Prior Childbirth Experience**

33.  Ms. Tvrdy's first child was born in a hospital. She found the hospital birth experience difficult and traumatic. She was confined to a bed during labor, underwent interventions she had hoped to avoid, and experienced severe complications immediately after delivery.

34.  Following childbirth, Ms. Tvrdy was sedated because of severe pain and was unable to hold her newborn son for several hours. During that time, numerous family members held her child before she was able to do so herself.

35.  Ms. Tvrdy struggled with the experience for years afterward and became determined to pursue a different childbirth experience in future pregnancies whenever medically appropriate.

36.  During her second pregnancy, Ms. Tvrdy took extensive steps to prepare for a low-intervention birth. She carefully monitored her health and

educated herself regarding childbirth practices. She would have sought CNM care if CNMs were legally allowed to assist her at home.

37.    Her second labor progressed naturally and rapidly. Ms. Tvrdy delivered her child without pain medication and with minimal medical intervention – her labor passed so quickly that she delivered before the on-call doctor could make it to the hospital. The experience was overwhelmingly positive and reinforced her belief that childbirth can safely occur with limited intervention when pregnancy is low risk.

38.    Encouraged by that experience, Ms. Tvrdy sought a home birth during her third pregnancy. She received prenatal care from a certified professional midwife and other providers and planned to give birth at home.

39.    Shortly before delivery, however, the midwife declined to attend the birth because of concerns arising from Nebraska's legal environment surrounding out-of-hospital childbirth. The midwife was unwilling to expose herself to criminal liability to assist the childbirth.

40.    Ms. Tvrdy ultimately proceeded with a home birth without a qualified birth attendant. Although the birth was successful, she experienced significant anxiety because she lacked the professional support she desired.

41.    Ms. Tvrdy does not believe unassisted home birth is ideal. While she felt capable of assuming responsibility for herself and her child during

labor, she wished to have a trained professional present to monitor for complications and facilitate transfer to a hospital if necessary.

42. During her fourth pregnancy, Ms. Tvrdy again desired a home birth. But because no qualified provider was available to attend her and because nearby hospital childbirth services had become increasingly limited, Plaintiff concluded that a hospital birth was her only safe and realistic option.

43. Ms. Tvrdy delivered her fourth child in a hospital. Although the birth was generally successful, Plaintiff found the experience more stressful and less comfortable than childbirth in her home environment.

44. Based on her experiences, Plaintiff believes that home birth with professional midwife assistance provides the childbirth model best suited to her needs, religious values, and family circumstances.

**Childbirth Values and Preferences**

45. Ms. Tvrdy is a practicing Christian. Her religious beliefs substantially inform her views regarding pregnancy, childbirth, motherhood, and family life.

46. Ms. Tvrdy believes that every child is a sacred gift from God and that childbirth is a uniquely significant spiritual event. She believes that God designed pregnancy and childbirth with purpose and that mothers have a responsibility to honor that design whenever it is safe and appropriate to do so.

47.   Ms. Tvrdy believes that childbirth is ordinarily a natural physiological process rather than a medical condition requiring routine intervention. In her view, complications can arise during childbirth, but such complications are the exception rather than the rule.

48.   Ms. Tvrdy believes that mothers bear a God-given responsibility to make decisions concerning the care and wellbeing of their children, including decisions regarding the location of childbirth and the professionals who will assist during labor and delivery.

49.   Ms. Tvrdy believes that women should be free to welcome their children into the world in the environment where they feel safest and most capable of carrying out that responsibility. For her, that environment is her home, supported by qualified medical professionals who respect both the sanctity of human life and God's design for childbirth.

50.   Ms. Tvrdy does not oppose medicine or medical intervention. She believes that God has provided skilled healthcare professionals to care for mothers and children when complications arise. She also believes that medical intervention is appropriate when necessary to protect the health and safety of mother or child.

51.   At the same time, Ms. Tvrdy believes that unnecessary intervention can interfere with the natural childbirth process and may create complications that otherwise would not occur. She believes that departures

11

from the normal physiological process of childbirth should occur only when medically necessary. To that end, she wishes to avoid unnecessary medical interventions commonly associated with hospital births, including interventions driven by scheduling, efficiency, or provider convenience.

52.   Plaintiff's religious convictions are reinforced by both her personal childbirth experiences and her professional experience as a labor-and-delivery nurse.

53.   Ms. Tvrdy believes that certified nurse midwives are uniquely qualified to support low-risk pregnancies in a manner consistent with her religious beliefs. She desires professional assistance during childbirth, but she seeks that assistance in a setting that honors her religious convictions regarding God's design for childbirth and the responsibilities entrusted to mothers.

54.   Ms. Tvrdy does not wish to give birth unassisted. Rather, she wishes to give birth at home with the assistance of a certified nurse midwife who can provide professional care, identify complications, and coordinate transfer to a hospital if necessary.

55.   Nebraska's prohibition on certified nurse midwives attending home births prevents Ms. Tvrdy from obtaining care consistent with her religious convictions, personal childbirth experiences, and professional judgment.

12

**Plaintiff Amanda Musilek**

**Background**

56.   Amanda Musilek is a resident of Omaha, Nebraska.

57.   Ms. Musilek is married and is the mother of one child. She is currently pregnant with her second child.

58.   Ms. Musilek attended the University of Nebraska–Lincoln, where she earned degrees in marketing and management. She later received training as a doula through DONA International and became involved in Nebraska's childbirth and midwifery community.

59.   Ms. Musilek has spent years researching childbirth practices, maternal outcomes, and midwifery care. Long before becoming pregnant with her first child, she researched home birth and concluded that professionally assisted home birth was the childbirth model best suited to her values and family plans.

60.   Ms. Musilek wishes to give birth at home with the assistance of a certified nurse midwife for her current pregnancy and all future low-risk pregnancies.

**Prior Childbirth Experience**

61.   Prior to becoming pregnant with her first child, Ms. Musilek extensively researched childbirth options and developed a detailed birth plan centered on home birth with professional midwife assistance. Throughout her

13

pregnancy, Ms. Musilek received prenatal care consistent with that plan and prepared for a professionally attended home birth.

62. As her pregnancy progressed, however, Ms. Musilek became increasingly concerned about Nebraska's legal restrictions on home birth providers and the practical difficulties those restrictions created for obtaining professional assistance.

63. Ms. Musilek ultimately concluded that she could not safely proceed with her planned home birth under the circumstances created by Nebraska law.

64. Shortly before delivery, Ms. Musilek transferred her care to a hospital-based provider. Her labor progressed rapidly. By the time she reached the hospital, she was nearly ready to deliver.

65. Ms. Musilek's daughter was born healthy, and Ms. Musilek is grateful for that outcome. Nevertheless, she believes that the transfer to a hospital environment deprived her of the childbirth experience she had carefully planned and prepared for throughout her pregnancy.

66. Ms. Musilek found the hospital environment more stressful and less conducive to labor than the home-birth setting she had originally chosen. She believes that the postpartum difficulties she experienced resulted from being required to leave her home during active labor and transition to an unfamiliar clinical environment.

14

67.    Ms. Musilek's experience reinforced her belief that home birth with professional midwife assistance remains the childbirth model best suited to her needs, values, and family circumstances.

68.    Ms. Musilek does not believe unassisted home birth is the preferred or safest option. She desires the presence of a trained medical professional capable of monitoring labor, identifying complications, and facilitating transfer to a hospital if necessary.

69.    Ms. Musilek is currently pregnant and wishes to obtain professionally assisted home-birth services for her present pregnancy. Nebraska's prohibition on certified nurse midwives attending home births prevents her from doing so.

**Childbirth Preferences and Values**

70.    Ms. Musilek's interest in childbirth did not begin with her own pregnancies. For years, she studied childbirth practices, maternal outcomes, and midwifery care and became actively involved in Nebraska's home-birth community.

71.    Ms. Musilek also received training as a doula and went on to provide labor and birth support. This training and experience informed a deeper understanding of the benefits and limitations of different models of maternity care, including chosen birth setting.

15

72. Through her research, training, and firsthand observations, Ms. Musilek became convinced that professionally assisted home birth is a safe and appropriate option for many low-risk pregnancies and that certified nurse midwives are among the most qualified professionals to provide such care.

73. Ms. Musilek has also been involved in efforts to expand access to home-birth services in Nebraska. She has communicated with legislators, followed proposed legislation concerning midwifery and home birth, and remained active in discussions within Nebraska's childbirth community regarding the State's restrictions on home-birth providers.

74. Ms. Musilek hoped that Nebraska's laws would eventually change through the legislative process. But despite years of advocacy by mothers, midwives, and other supporters of home-birth access, Nebraska continues to prohibit certified nurse midwives from attending home births.

75. Ms. Musilek seeks home birth because she values continuity of care, individualized decision-making, informed consent, and an approach to childbirth that recognizes labor and delivery as natural physiological processes rather than medical conditions requiring routine intervention.

76. Ms. Musilek is not opposed to medicine or medical intervention. To the contrary, she believes that professional medical assistance is important and that intervention should be available whenever circumstances require it.

16

77.   Ms. Musilek does not believe unassisted home birth is the preferred option for low-risk pregnancies. She desires the assistance of a trained medical professional capable of monitoring labor, identifying complications, and facilitating transfer to a hospital when necessary.

78.   Ms. Musilek's religious beliefs also inform her views regarding childbirth and motherhood. As a devout Christian, she believes that children are gifts from God and that mothers bear responsibility for making careful and conscientious decisions concerning their care and wellbeing.

79.   Ms. Musilek believes that childbirth decisions should be guided by responsible stewardship, informed judgment, and respect for God's design for childbirth.

80.   Ms. Musilek believes that home birth with professional midwife assistance best allows her to fulfill those responsibilities while also protecting the health and safety of both mother and child.

81.   Nebraska's prohibition on certified nurse midwives attending home births prevents Ms. Musilek from obtaining care consistent with her values, beliefs, and considered judgment regarding childbirth.

### Plaintiffs' Ongoing and Prospective Harm

82.   Neither Plaintiff seeks an unassisted home birth.

83.   Plaintiffs believe that labor without professional medical assistance can create unnecessary risks for both mother and child. Both desire

17

the presence of a trained medical professional capable of monitoring labor, identifying complications, and facilitating transfer to a hospital when necessary.

84.    Plaintiffs specifically seek the assistance of CNMs because CNMs are licensed healthcare professionals with specialized training in pregnancy, labor, delivery, postpartum care, and neonatal assessment.

85.    Plaintiffs understand that certified nurse midwives are trained to identify complications, assess risk factors, initiate emergency procedures when necessary, and coordinate timely transfer to a hospital setting.

86.    Plaintiffs' desire for certified nurse-midwife assistance reflects their commitment to protecting the health and safety of both mother and child while preserving the benefits of home birth.

87.    Plaintiffs would willingly comply with reasonable health and safety requirements governing home birth, including risk screening, licensure requirements, emergency-transfer protocols, and other standards designed to protect maternal and infant health.

88.    The local hospitals near Plaintiffs' residences do not offer comparable CNM-supported childbirth options but are available for emergency care.

18

89.    If allowed to give birth at home with a CNM attendant, Plaintiffs would insist that any birth attendant adhere to health and safety regulations including, but not limited to, CNM licensing and patient risk pre-qualification.

90.    But Nebraska's prohibition deprives Plaintiffs of the childbirth option they believe best balances maternal autonomy, family values, religious convictions, and responsible medical care.

91.    Plaintiffs intend to give birth at home with CNM assistance for the current and all future low-risk pregnancies. Nebraska's prohibition on CNMs attending home births prevents Plaintiffs from exercising that choice and will continue to burden them in future childbirths.

92.    Plaintiffs do not seek to impose their preferences on others and do not believe home birth is appropriate for all women. They seek only the ability for women who desire home birth to make informed, voluntary choices and to receive care from qualified medical professionals consistent with their values and circumstances.

93.    Plaintiffs intend to give birth multiple times in the future and remain committed to home birth with certified nurse midwife assistance. Nebraska's prohibition ensures that Plaintiffs will face the same unlawful constraints in future pregnancies unless the law is enjoined.

94.    Plaintiffs challenge Nebraska's prohibition as applied to their choice to give birth in the manner and setting they deem appropriate, with the

19

assistance of a licensed medical professional. The choice of where and how to give birth implicates bodily integrity, religious conviction, family life, and deeply personal decisions concerning pregnancy and childbirth.

## CLAIMS FOR RELIEF

### First Cause of Action

### Violation of Nebraska's First Freedom Act, Neb. Rev. Stat. §§ 20-701 *et seq.*

95.    Plaintiffs incorporate by reference each and every allegation set forth in this Complaint.

96.    Nebraska's First Freedom Act, Neb. Rev. Stat. §§ 20-701 to -705, provides that state action shall not substantially burden a person's exercise of religion unless the State demonstrates that application of the burden to the person in the particular instance (a) furthers a compelling governmental interest and (b) is the least restrictive means of furthering that interest. Neb. Rev. Stat. § 20-703.

97.    The Act defines "exercise of religion" broadly to include "any action that is motivated by a sincerely held religious belief, whether or not the exercise is compulsory or central to a larger system of religious belief." *Id.* § 20-702(2).

98.    The Act defines "state action" to mean the "implementation or application of any law, including … state laws. *Id.* § 20-702(5).

20

99.   The Act defines "substantially burden" to mean "any action that directly or indirectly constrains, inhibits, curtails, or denies the exercise of religion by any person or compels action contrary to a person's exercise of religion." *Id.* § 20-702(6)(a).

100.   Plaintiffs hold sincere religious beliefs regarding pregnancy, childbirth, motherhood, and family life.

101.   Plaintiffs further believe that childbirth should occur in the environment where a mother can best honor those religious responsibilities while safeguarding the wellbeing of both mother and child.

102.   Plaintiffs believe that home birth with the assistance of a certified nurse midwife best reflects these religious convictions because it allows them to welcome their children into the world in a manner consistent with God's design for childbirth while also exercising responsible stewardship over the life and health of both mother and child.

103.   Plaintiffs' desire to give birth at home with the assistance of a certified nurse midwife is motivated, at least in part, by these sincerely held religious beliefs and therefore constitutes an exercise of religion within the meaning of the First Freedom Act.

104.   By enforcing the prohibition on certified nurse midwives attending home births, Defendants substantially burden Plaintiffs' exercise of religion by preventing them from obtaining the childbirth care they believe is most

21

consistent with religious obligations concerning childbirth, motherhood, and stewardship of the children entrusted to their care.

105. Nebraska law categorically forecloses the course of action Plaintiffs believe best fulfills their religious obligations by criminalizing assistance from the very professionals they seek to engage.

106. Nebraska's prohibition is underinclusive and irrational as applied to Plaintiffs because it permits unassisted home birth while forbidding attendance by licensed medical professionals with specialized training in childbirth, thereby allowing conduct that presents greater risks while prohibiting conduct that mitigates those risks.

107. By substantially burdening Plaintiffs' sincerely held religious exercise without satisfying strict scrutiny, Defendants have violated and continue to violate the Nebraska First Freedom Act.

108. Plaintiffs are entitled to declaratory and injunctive relief pursuant to Neb. Rev. Stat. § 20-704 to prevent ongoing and future enforcement of the prohibition against certified nurse-midwife-attended home births.

## Second Cause of Action

## Violation of the Free Exercise Clause of the First Amendment

109. Plaintiffs incorporate by reference each and every allegation set forth in this Complaint.

110. The Free Exercise Clause of the First Amendment prohibits the government from enacting or enforcing laws that burden sincere religious exercise unless the law is neutral and generally applicable or, if not, unless the government satisfies strict scrutiny.

111. Plaintiffs are practicing Christians who hold sincere religious beliefs concerning pregnancy, childbirth, motherhood, and family life.

112. Plaintiffs believe that every child is a sacred gift from God and that childbirth is a uniquely significant spiritual event.

113. Plaintiffs further believe that God intentionally designed pregnancy and childbirth and that mothers bear a God-given responsibility to make decisions concerning the care of their children, including decisions regarding the location of childbirth and the professionals who will assist during labor and delivery.

114. Plaintiffs believe that women should ordinarily be permitted to labor and give birth in a manner consistent with God's design unless medical circumstances require intervention.

115. Plaintiffs' desire to give birth at home with the assistance of a certified nurse midwife is motivated, at least in part, by these sincerely held religious beliefs.

116. Nebraska's prohibition on certified nurse midwives attending home births substantially burdens Plaintiffs' religious exercise by preventing

23

them from obtaining the childbirth care they believe is most consistent with their religious obligations concerning motherhood, childbirth, and stewardship of the children entrusted to their care.

117. As applied to Plaintiffs, the challenged law interferes with a decision that they sincerely believe God has entrusted to mothers rather than the State.

118. The challenged prohibition is not generally applicable because Nebraska permits women to choose unassisted home birth while prohibiting assistance from licensed medical professionals specifically trained to manage low-risk pregnancies and childbirth.

119. Nebraska therefore permits conduct that presents greater risks while prohibiting conduct that mitigates those risks, undermining any claim that the prohibition is generally applicable and uniformly directed toward protecting maternal or fetal health.

120. By allowing unassisted home births while forbidding certified nurse-midwife attendance, Nebraska treats comparable secular conduct more favorably than religious exercise.

121. Even if Nebraska's prohibition was deemed neutral and generally applicable, its application to Plaintiffs violates the Free Exercise Clause.

24

122. Defendants cannot demonstrate that prohibiting certified nurse midwives from attending Plaintiffs' home birth serves a compelling governmental interest as applied to them.

123. Plaintiffs' pregnancies are low risk. They seek assistance from a licensed medical professional specifically trained to manage low-risk pregnancies, identify complications, and coordinate transfer to a hospital when necessary.

124. Even assuming a compelling governmental interest in maternal or fetal health, a categorical prohibition on certified nurse-midwife attendance at home births is not narrowly tailored to serve that interest.

125. Less restrictive alternatives are readily available, including individualized risk assessments, informed-consent requirements, physician-collaboration requirements, emergency-transfer protocols, and professional discipline for unsafe practices.

126. By enforcing Neb. Rev. Stat. § 38-613(3)(b) against Plaintiffs, Defendants violate their rights under the Free Exercise Clause of the First Amendment.

127. Plaintiffs are entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and *Ex parte Young*.

25

## Third Cause of Action

### Violation of the Due Process
### of Law Clause of the Fourteenth Amendment

128.  Plaintiffs incorporate by reference each and every allegation set forth in this Complaint.

129.  Plaintiffs are persons under 42 U.S.C. § 1983.

130.  The Due Process of Law Clause of the Fourteenth Amendment protects the liberty of individuals to be free from undue government interference.

131.  Under the Due Process Clause, a law cannot deprive any person of her fundamental right to choose the manner and circumstances of giving birth unless the law is narrowly tailored to achieve a compelling government interest.

132.  Decisions concerning childbirth directly affect a woman's body, medical autonomy, and physical integrity. They involve intimate, irreversible physical processes and carry profound consequences for both mother and child.

133.  The right of women to choose the manner and circumstances of giving birth is deeply rooted in this nation's history and tradition. Throughout American history, childbirth has occurred primarily outside of hospitals and has traditionally been attended by midwives rather than physicians. Government regulation of childbirth has historically focused on health and

safety, not on prohibiting women from choosing the setting or attendants for childbirth.

134.  But by imposing the challenged provisions on CNMs and expecting mothers, Nebraska unnecessarily limits and burdens mothers' privacy in family-planning and their choices for childbirth services.

135.  These burdens imposed by Nebraska are not narrowly tailored to a compelling state interest. Indeed, they are not even rationally related to a legitimate government interest.

136.  Nebraska's prohibition applies categorically, without regard to an individual woman's health, pregnancy risk level, proximity to emergency care, or the qualifications of the certified nurse midwife. Plaintiffs' pregnancies are low risk, yet the law makes no allowance for individualized assessment.

137.  Expecting mothers in many parts of Nebraska, especially rural areas, have no options for medically trained birth attendants.

138.  Nebraska's prohibition on certified nurse midwives attending home births does not reflect a judgment about training, competence, or patient safety. Certified nurse midwives are licensed medical professionals whom Nebraska permits to provide prenatal, delivery, and postpartum care in hospitals and other clinical settings.

139.  Instead, the prohibition functions to reserve childbirth services for hospital-based providers by excluding CNMs from the home-birth setting

27

altogether. The law does not prohibit unassisted home birth. It excludes only certified nurse midwives—the providers most capable of safely attending low-risk out-of-hospital births.

140.   CNMs are highly trained and regulated by Nebraska law. Federal and state law ensure that home birth patients receive timely emergency services if necessary. There is no compelling or rational reason to impose the challenged restrictions, which effectively deny access to services in many parts of the state.

141.   Given the time-sensitive nature of childbirth, Plaintiffs are suffering substantial and irreparable harm and will continue to do so until this Court declares the challenged restrictions unlawful and enjoins their enforcement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

A.  A declaratory judgment that Nebraska's prohibition on certified nurse midwives attending home births, Neb. Rev. Stat. § 38-613(3)(b), violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Free Exercise Clause of the First Amendment to the United States Constitution, and the Nebraska First Freedom Act, Neb. Rev. Stat. §§ 20-701 to -705, as applied to Plaintiffs;

B.  For a preliminary and permanent injunction enjoining Defendants from enforcing the home birth prohibition of Nebraska's Certified Nurse Midwifery Practice Act;

C.  Nominal damages;

D.  An award of costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

E.  Any such other relief as the Court may deem just and proper.

Respectfully submitted this 23rd day of June, 2026.

/s/ Joshua Polk
JOSHUA POLK
Cal. Bar No. 329205
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Tel: (916) 419-7111
JPolk@pacificlegal.org

GLENN E. ROPER
Colo. Bar No. 38723
PACIFIC LEGAL FOUNDATION
1745 Shea Center Dr., Suite 400
Highlands Ranch, CO 80129
Tel: (916) 419-7111
geroper@pacificlegal.org

*Attorneys for Plaintiffs*